## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

2019 AUG 14  P 1:47

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-157-01-PB |
| | ) | |
| MICHAEL A. ALBERT | ) | |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, Scott W. Murray, United States Attorney for the District of

New Hampshire, and the defendant, Michael A. Albert, and the defendant's attorney, Richard

Guerriero, Esquire, enter into the following Plea Agreement:

### 1.  The Plea and the Offense

The defendant agrees to waive his right to have this matter presented to a grand jury and

plead guilty to an Information charging him: in Count One with structuring cash deposits to

evade bank reporting requirements, in violation of 31 U.S.C. §§ 5324; in Counts Two and Three

with money laundering cash payments represented to be the proceeds of a specified illegal

activity  with the intent to evade financial reporting requirements in violation of 18 U.S.C.

§ 1956; and in Counts Four, Five and Six with failing to file IRS Forms 8300 for cash

transactions by a nonfinancial trade or business in excess of $10,000, in violation of 31 U.S.C.

§§ 5331 and 5322. Additionally, the defendant will withdraw any claim or objection regarding

forfeiture of $434,201 to the government in docket number 1:16-cv-258-JD if the Court accepts

this binding Plea Agreement.   With the advice of counsel, the defendant has entered into

multiple statute of limitation extension agreements and he hereby waives any defense he may

- 1 -

have based upon the expiration of any applicable statute of limitation.

In exchange for the defendant's guilty plea and his agreement regarding forfeiture, the United States (1) agrees to the sentencing stipulations identified in Section 6 of this agreement and (2) agrees that it will not seek additional forfeiture arising from the facts that give rise to the Information in this case.

### 2. The Statutes and Elements of the Offenses

**The Statute-Count One**

Title 31, United States Code, Sections 5324(a)(1) and (d)(1) provide, in pertinent part:

**§ 5324. Structuring transactions to evade reporting requirement prohibited**

**(a) Domestic coin and currency transactions involving financial institutions.**--No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or recordkeeping requirements imposed by any order issued under section 5326, or the recordkeeping requirements imposed by any regulation prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508--

> **(1)** cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) or 5325 or any regulation prescribed under any such section, to file a report or to maintain a record required by an order issued under section 5326, or to maintain a record required pursuant to any regulation prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508;
>
> .   .   .

**(d) Criminal penalty.**—

> **(1) In general.**--Whoever violates this section shall be fined in accordance with title 18, United States Code, imprisoned for not more than 5 years, or both.

.   .   .

**The Elements-Count One**

The defendant understands that the offense in Count One has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant knew that a financial institution was legally obligated to report currency transactions in excess of $10,000;

Second, that the defendant engaged in the structuring of one or more currency transactions; and

Third, that the defendant acted with the intent to evade the reporting requirement.

3 Modern Federal Jury Instructions-Criminal § 50B.05 (2018).

### The Statute-Counts Two and Three

Title 18, United States Code, Sections 1956(a)(3) provides, in pertinent part:

### § 1956. Laundering of monetary instruments

**(a)**

. . .

**(3)** Whoever, with the intent--

. . .

**(C)** to avoid a transaction reporting requirement under State or Federal law,

conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

### The Elements-Counts Two and Three

The defendant understands that the offense in each of Counts Two and Three have the

following elements, each of which the United States would be required to prove beyond a

reasonable doubt at trial:

First, that the defendant conducted a financial transaction, as charged in the Information, namely, the cash sale of a vehicle in an amount over $10,000, that affected interstate or foreign commerce in any way or degree;

- 3 -

Second, that the transaction involved property represented by a law enforcement officer to be the proceeds of some form of unlawful activity, in this case, illegal drug trafficking; and

Third, that the defendant conducted the financial transaction with the intent to avoid a transaction reporting requirement of federal law, in this case, to avoid the filing of an IRS Form 8300 reporting a cash transaction by a nonfinancial trade or business in excess of $10,000, in violation of 31 U.S.C. § 5331(a).

S2 Modern Federal Jury Instructions-Criminal 6.18.1956I (2018).

**The Statute-Counts Four, Five and Six**

Title 31, United States Code, Sections 5324(b)(1) and (d) provide, in pertinent part:

**§ 5324. Structuring transactions to evade reporting requirement prohibited**

**(b) Domestic coin and currency transactions involving nonfinancial trades or businesses.**--No person shall, for the purpose of evading the report requirements of section 5331 or any regulation prescribed under such section—

**(1)** cause or attempt to cause a nonfinancial trade or business to fail to file a report required under section 5331 or any regulation prescribed under such section;
    .  .  .

**(d) Criminal penalty.**--

**(1) In general.**--Whoever violates this section shall be fined in accordance with title 18, United States Code, imprisoned for not more than 5 years, or both.

**(2) Enhanced penalty for aggravated cases.**--Whoever violates this section while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period shall be fined twice the amount provided in subsection (b)(3) or (c)(3) (as the case may be) of section 3571 of title 18, United States Code, imprisoned for not more than 10 years, or both.

**The Elements-Count Four**

The defendant understands that the offense in Count Four has the following elements,

each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant was engaged in a transaction in currency in excess of $10,000

- 4 -

cash with a "nonfinancial trade or business," specifically, Mike's Affordable Auto, LLC;

Second, that the "nonfinancial trade or business" involved was required to file a report, in this case, an IRS Form 8300;

Third, that the defendant knew that the "nonfinancial trade or business" was required to file that report;

Fourth, that the defendant caused the "nonfinancial trade or business" to fail to file the required report;

Fifth, that the defendant did so for the purpose of evading the reporting requirement; and

Sixth, that the defendant knew that it was unlawful to cause the nonfinancial trade or business to fail to file the required report.

The term "nonfinancial trade or business" as defined at 31 U.S.C. § 5312 means any trade or business other than a financial institution that is subject to the reporting requirements of section 31 U.S.C. § 5313 and regulations prescribed thereunder.

Title 31, United States Code, Sections 5324(b) & (d)(1) and 5313.

**The Elements-Counts Five and Six**

The defendant understands that the offenses in each of Counts Five and Six have the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant was engaged in a transaction in currency in excess of $10,000 cash with a "nonfinancial trade or business," specifically, Mike's Affordable Auto, LLC;

Second, that the "nonfinancial trade or business" involved was required to file a report, in this case, an IRS Form 8300;

Third, that the defendant knew that the "nonfinancial trade or business" was required to file that report;

Fourth, that the defendant caused or attempted to cause the "nonfinancial trade or business" to fail to file the required report;

- 5 -

Fifth, that the defendant did so for the purpose of evading the reporting requirement;

Sixth, that the defendant knew that it was unlawful to cause the "nonfinancial trade or business" to fail to file the required report; and

Seventh, that the defendant did so while violating another law of the United States, namely, money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B).

The term "nonfinancial trade or business" means any trade or business other than a financial institution that is subject to the reporting requirements of section 31 U.S.C. § 5313 and regulations prescribed thereunder.

Title 31, United States Code, Sections 5324(b) & (d)(2) and 5313.

### 3. Offense Conduct

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of each of the offenses beyond a reasonable doubt. At all times relevant to the charges here:

The defendant, Michael A. Albert ("ALBERT"), resided in New Hampshire and owned a used automobile business known as Mike's Affordable Auto, LLC which operated in two locations: Mike's Affordable Auto, 124 Manchester Street, Concord, New Hampshire; and Mike's Affordable Auto 2, 99 Dover Road, Chichester, New Hampshire. ALBERT was the principal owner and operator of Mike's Affordable Auto, LLC, which was established on July 25, 2008, and was in good standing with the State of New Hampshire Secretary of State's Office.

The defendant maintained an account for Mike's Affordable Auto, LLC at TD Bank ("the operating account") and utilized TD Bank branch offices in New Hampshire. TD Bank is a financial institution, as that term is defined at 18 U.S.C. § 20 and 31 U.S.C. § 5312(a)(2).

As a financial institution, TD Bank was required by law to report cash deposits in excess

- 6 -

of $10,000 to the Internal Revenue Service (IRS).   In a non-custodial conversation with an

undercover agent, ALBERT acknowledged that he knew banks were required to make such

reports.

Additionally, all "nonfinancial trades or businesses" were required by federal law to file a

"Report of Cash Payments over $10,000 Received in a Trade or Business" to the IRS using IRS

Form 8300.   Mike's Affordable Auto, LLC was a "nonfinancial trade or business" required to

file Forms 8300 for all cash payments it received in excess of $10,000. During a non-custodial

conversation with an undercover agent, ALBERT acknowledged that he knew Mike's Affordable

Auto, LLC was required to file Forms 8300.

As to Count One (31 U.S.C. § 5324(a)(1) and (d)(1), structuring cash deposits to avoid

bank reporting requirements), business records of Mike's Affordable Auto, LLC and of the

business's account at TD Bank would show that between on or about May 20, 2013, and March

25, 2014, ALBERT made or caused multiple cash deposits to be made to the operating account

in a structured manner.   That is, the deposits were made in certain dollar amounts, on certain

days, and at certain bank branches in a manner to cause TD Bank to not file Currency

Transaction Reports for cash deposits in excess of $10,000.[1]

As to Counts Two and Three (18 U.S.C. § 1956(a)(3)(B), sting money laundering),

ALBERT was involved in several meetings with an undercover agent (UCA#1) who represented

that he was a drug dealer who wanted to pay cash for a vehicle and that he intended to have

---

[1] The parties disagree about the aggregate amount of structured deposits. The United States
asserts that the defendant structured more than $400,000. While the defendant admits guilt and
accepts responsibility for structuring deposits as alleged on Count One, he reserves the right to
argue at sentencing that that aggregate amount structured was less than $400,000.

"hides" installed in any vehicle he purchased from ALBERT.  During an initial meeting on

February 25, 2015 UCA#1 made clear to ALBERT that he did not want people to know what he

was spending his money on and asked the defendant if the purchase price was over $10,000

whether the defendant had to file "one of those bank reports."  ALBERT advised that he did not

have to file such a report and that UCA#1 could pay part of the sales price on one day and the

remainder on the next day.

On May 26, 2015, in the District of New Hampshire, UCA#1 introduced UCA#2 to

ALBERT and UCA#2 told ALBERT that he made his money selling cocaine.  ALBERT then

sold a 2007 BMW to UCA#2 for $17,800 and instructed UCA#2 to make two separate cash

payments for the purchase of the vehicle, each in an amount less than $10,000, and said to

UCA#2 "[n]o, so I'm not doing over ten grand.  I don't have to do nothing."  UCA#2 then did

make two cash payments, each under $10,000 totaling $17,800, and ALBERT thereafter did not

file an IRS Form 8300 in connection with the $17,800 cash sale of said vehicle.

Again, on August 4, 2015, ALBERT sold UCA#2 another vehicle, a 2007 Chevrolet

Tahoe automobile for $19,500 in cash.  For that vehicle, ALBERT generated a bill of sale that

reflected a sale price of only $9,500, not the actual cash purchase price of $19,500.  ALBERT

thereafter did not file an IRS Form 8300 in connection with the $19,500 cash sale of the vehicle.

As to Count Four, (31 U.S.C. § 5324(b)(1) & (d)(1), failing to file IRS Form 8300), on

May 29, 2014, ALBERT received a cash payment of $12,500 toward the purchase of vehicle, a

2008 Audi A8, and did not file an IRS Form 8300.

As to Counts Five and Six (31 U.S.C. § 5324(b)(1) & (d)(2), failing to file IRS Forms

8300), while committing money laundering as charged in Counts Two and Three and described

- 8 -

above, ALBERT received cash in an amounts in excess of $10,000 for each of the two vehicles referenced above in Counts Two and Three above and did not file an IRS Form 8300 related to either of those two cash transactions.

4. Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offenses are:

A.    As to:
Count One, a maximum prison term of 5 years (31 U.S.C. § 5324(a)(1) & (d)(1));
Counts Two and Three, a maximum prison term of 20 years (18 U.S.C. § 1956(a)(3)(B));
Count Four, a maximum prison sentence of 5 years (31 U.S.C. § 5324(b)((1) & (d)(1));
Counts Five and Six, a maximum prison term of 10 years (31 U.S.C. § 5324(b)(1) & (d)(2)).

B.    As to:
Count One, a maximum fine of $500,000 (31 U.S.C. § 5324(d)(2) & 18 U.S.C. § 3571((b)(3));
Counts Two and Three, a maximum fine of $250,000 (18 U.S.C. § 3571((b)(3));
Count Four, a maximum fine of $250,000 (31 U.S.C. § 5324(d)(1) and 18 U.S.C. § 3571((b)(3));
Counts Five and Six, a maximum fine of $500,000 (31 U.S.C. § 5324(d)(2) & 18 U.S.C. § 3571((b)(3));

C.    A term of supervised release of not more than 3 years (18 U.S.C. § 3583(b)(2)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.    A mandatory special assessment of $600, $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

In addition to the other penalties provided by law, the Court may order him to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B. Respond to questions from the Court;

C. Correct any inaccuracies in the pre-sentence report;

D. Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree (a) that an appropriate term of imprisonment in this case is not more than 18 months and (b) that no fine should be imposed.

The parties intend the above stipulation to be "binding" under Fed. R. Crim. P.

- 10 -

11(c)(1)(C).  By using the word binding, the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct

- 11 -

justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H. Fails to appear in court as required;

I. After signing this Plea Agreement, engages in additional criminal conduct; or,

J. Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B. To be tried by a jury and, at that trial, to the assistance of counsel;

- 12 -

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate him; and

E.      To compulsory process for the attendance of witnesses to testify in his
defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the

foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be

entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions

about the offense, and if he answers those questions falsely under oath, on the record, and in the

presence of counsel, his answers will be used against him in a prosecution for perjury or making

false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.      Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because
he is guilty;

B.      Is entering into this Plea Agreement without reliance upon any promise or benefit of any
kind except as set forth in this Plea Agreement or revealed to the Court;

C.      Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.      Understands the nature of the offense to which he is pleading guilty,
including the penalties provided by law; and

E.      Is completely satisfied with the representation and advice received from
his undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the

undersigned parties and cannot bind any other non-party federal, state or local authority. The

- 13 -

defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

    11.  Collateral Consequences.

    The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

    The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to

- 14 -

withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12. Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the information in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13. Waivers.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.   His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent with, or lower than, the stipulated maximum sentence specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

- 15 -

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.  By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.   His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is consistent with, or lower than, the stipulated maximum sentence specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the

- 16 -

Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

### 14.   Forfeiture of Assets

The defendant agrees to withdraw any claim or objection regarding forfeiture of

$434,201 to the government in docket number 1:16-cv-258-JD if the Court accepts this binding

Plea Agreement, and will thereby forfeit to the United States his interest, if any, in any assets

subject to forfeiture, pursuant to 31 U.S.C. § 5317(c), Four Hundred Thirty Four Thousand Two

Hundred One Dollars ($434,201.00) in U.S. Currency, more or less, seized from Michael Albert.

The defendant agrees and consents to the forfeiture of its interest in this asset pursuant to

any criminal, civil and/or administrative forfeiture action brought to forfeit this property.   The

defendant waives any further notification of forfeiture proceedings.   None of the forfeitures set

forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of

imprisonment, or other penalty imposed upon the defendant, nor shall the forfeitures be used to

offset the defendant's tax liability or any other debt owed by the defendant to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in

any manner, including, without limitation, by direct appeal and/or habeas corpus, to any

forfeiture carried out in accordance with this Plea Agreement on any grounds.

The defendant waives and releases any and all claims it may have to any property seized

by the United States, or any state or local law enforcement agency and turned over to the United

States, during the investigation and prosecution of this case, whether forfeited or not.   The

defendant agrees to hold the United States, its agents, and employees, and any state or local law

enforcement agency participating in the investigation and prosecution of this case, harmless from

any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure,

detention and return of any property in connection with the investigation and prosecution of this case.

The defendant acknowledges that the property to be forfeited in the parallel civil proceeding and referenced in this section is subject to forfeiture as property involved in illegal conduct.

15. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17.   Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Scott W. Murray
United States Attorney

Date: 08-12-2019         By: _____

Arnold H. Huftalen
Assistant United States Attorney
Bar Association #1215

- 18 -

53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
arnold.huftalen@usdoj.gov

The defendant, Michael Albert, certifies that he has read this 19-page Plea Agreement and that he fully understands and accepts its terms.

Date: _8 - 12. 2019_

_____
Michael Albert, Defendant

I have read and explained this 19-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _8 - 12 - 2019_

_____
Richard Guerriero, Esquire   NH Bar 10530
Attorney for Michael Albert

- 19 -